UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY GARDINER,

        Plaintiff,

v.                                                  Case No. 1:10-cv-289
                                                   Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                           /

**REPORT AND RECOMMENDATION**

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on July 19, 1960 (AR 24).[1] Plaintiff testified that he completed the 8th grade (AR 24). He alleged a disability onset date of January 1, 1999 (AR 25). Plaintiff had no past relevant work (AR 15). Plaintiff's FICA earnings report reflects that he had only $323.75 in earnings from 1985 through 2009, earning $100.00 in 1991 and $223.75 in 1992 (AR 103). In this regard, plaintiff testified that he "never had a real job" and the ALJ observed that, other than working "odd jobs," plaintiff "has never really worked in his life" (AR 15, 25). Plaintiff identified his disabling conditions as: vertigo; hearing problems; diabetes; high blood pressure; high cholesterol; back problems; knee problems (both knees); possibly fibromyalgia; hip problems; and heart burn (AR 112). Plaintiff described his primary limitations as dizziness from vertigo, a

---

[1] Citations to the administrative record will be referenced as (AR "page #").

fluttering heart, and pain in the back, hip and knees (AR 112). Plaintiff was represented by counsel during the administrative hearing (AR 19). On November 3, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-17). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review of this *pro se* appeal.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, ALJ Jones found that plaintiff has not engaged in substantial gainful activity since his SSI application date of April 16, 2007 (AR 12). At step two, the ALJ found that plaintiff suffered from severe impairments of: gastroesophageal reflux disease (GERD); vertigo; high blood pressure; diabetes; and atrial fibrillation (AR 12). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 13). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except:

> the claimant is an individual who could lift 20 pounds maximally, 10 pounds frequently, and 20 pounds occasionally; stand, walk, and sit for six hours each; who should avoid all exposure to hazards; and who should avoid walking on uneven surfaces.

(AR 13). The ALJ further found that plaintiff has no past relevant work (AR 15).

At step five, the ALJ found that with his RFC, plaintiff could perform a number of light, unskilled jobs in Michigan, including: fast food preparer (6,900 jobs); waiter (10,000 jobs); stock clerk (7,500 jobs); usher/ticket taker (5,400 jobs); and cashier (37,000 jobs) (AR 16).

Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since filing his application on April 16, 2007 (AR 16-17).

### III. ANALYSIS

Plaintiff filed a two-page document which the court construed as his *pro se* brief. *See* Brief (docket no. 10). Plaintiff states that he can perform no work due to vertigo, pain (in his back, knees, hip and shoulder) and his "3rd Grade education." *Id.* The court will address these issues.

#### A. Vertigo

The ALJ found that plaintiff suffered from a severe impairment of vertigo, based upon plaintiff's testimony: that he suffered an inner ear imbalance for ten years; that it is difficult for him to function after an attack; that during an attack he becomes dizzy and needs to hold on to something; and that he feels awful whenever he takes Valium and Antivert for this condition (AR 13). The record reflects that plaintiff was prescribed Antivert for vertigo in 2006 (AR 158). In April 2008, plaintiff's doctor diagnosed him as suffering from an inner ear disorder (labyrinthitis), prescribed 1/2 of an Antivert tablet as needed, and discontinued the Valium prescription (AR 196-97).

There is no question that plaintiff suffers from vertigo. The issue is whether this condition is work preclusive. The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment (AR 15). The ALJ found in pertinent part as follows:

> The undersigned notes that the claimant does not have a credible work history; he has never really worked in his life, excepting [sic] doing "odd jobs." The claimant testified that he is able to climb stairs with a railing, he could bend over, and he could lift 20 to 30 pounds. The claimant testified that he goes over to his mother's place to visit her and to see if she needs anything from the store. The claimant testified that he cooks whenever it is needed, shops for groceries, and mow

> [sic] the lawn. The claimant also reported that he does some repair work. The claimant reported that he is able to drive and go out on his own. He accomplishes all the above not withstanding his vertigo which allegedly is unresponsive to prescribed medication.

(AR 15).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ found contradictions among the medical records, plaintiff's testimony, and other evidence, such as his ability to function in the everyday matters of life despite his claim of vertigo, as noted above. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable

and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In addition, the ALJ accommodated plaintiff's vertigo in the RFC by specifying that he should avoid "all exposure to hazards" (e.g., machinery, heights, etc.) and avoid "walking on uneven surfaces" (AR 13, 176). Accordingly, the ALJ properly evaluated plaintiff's allegation of disabling vertigo.

### B. Pain in the back, knees, hip and shoulder

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 529 (1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). When evaluating a claimant's statements of subjective pain, the ALJ is required to determine the actual intensity and persistence of the claimant's symptoms and how these symptoms limit the claimant's ability to work. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009), citing 20 C.F.R. § 404.1529(c) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work").

In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective

7

complaints of pain as set forth in 20 C.F.R. § 404.1529). To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

Plaintiff met the first prong of the *Duncan* test, the ALJ having found that he had severe impairments of: vertigo; hearing problems; diabetes; high blood pressure; high cholesterol; back problems; knee problems (both knees); possibly fibromyalgia; hip problems; and heart burn (AR 112).

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of her pain. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young*, 925 F.2d at 151. Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones v. Secretary of Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991). The ALJ's review of the medical record did not indicate the existence of these reliable indicators (AR 12-15). The ALJ observed that there are no opinions from treating or examining physicians indicating that plaintiff is disabled. The consultative examiner, David Newcomb, M.D., found that plaintiff had mild tenderness in the shoulders and right lumbar spinal region, with mild patellofemoral crepitance in the knees bilaterally (AR 166). However, the doctor also found that plaintiff had full range of motion of all joints checked (i.e., knees, dorsolumbar spine, hip and

shoulders) with no obvious bone deformities and no positive trigger points (AR 166-67). The doctor concluded that while plaintiff complained of chronic pain in multiple joints, he had no obvious trigger points, that his musculoskeletal symptoms were likely from a chronic degenerative arthritic process, that he had a normal range of motion and that he was neurologically intact (AR 168). After reviewing plaintiff's medical records, a non-examining DDS physician, Dinesh Tanna, M.D., concluded that plaintiff could occasionally lift and carry up to 20 pounds, frequently lift 10 pounds, stand and/or walk up to 6 hours in an 8-hour workday, sit up 6 hours in an 8-hour workday, and had unlimited ability to push or pull (AR 173). Plaintiff's only other limitations were to avoid balancing and avoid hazards (machinery, heights, etc.) (AR 174-76). Accordingly, the reliable indicators or intense pain appear absent.

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). As previously discussed, plaintiff engages in a number of household and social activities. *See* discussion, § III.A., *supra*. After reviewing the record, the ALJ found that plaintiff's statements were not credible to the extent they were inconsistent with the RFC (AR 15).

Finally, plaintiff has not met the second part of the second prong of the *Duncan* test, i.e., whether the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Plaintiff has not identified any medical condition which could give rise to the alleged disabling pain. Plaintiff testified that he did not have surgery on either knee and did not wear a knee-brace (AR 27). Plaintiff further testified that he did not have a history surgery, physical therapy or epidural shots for his back (AR 27). While plaintiff reported to Dr. Newcomb that he had a history of "questionable fibromylagia," there is no record of that diagnosis

9

or treatment for that condition (AR 165). The evidence indicates that plaintiff's pain was not disabling under the *Duncan* standard. Accordingly, plaintiff's claim of disabling pain should be denied.

### C.     Education

Plaintiff's contention that he is disabled due to having only a 3rd grade education is not supported by the record. As an initial matter, plaintiff's contention is contrary to his testimony and representations made during the course of the administrative proceeding. Plaintiff stated in his disability report that he completed the 8th grade in approximately 1974, and thought he was in special education classes in the 6th, 7th and 8th grade (AR 118). Plaintiff also testified at the administrative hearing that he completed the 8th grade (AR 24). In addition, plaintiff reported to the consultative examiner, Dr. Newcomb, that he completed the 8th grade, can read and write, and formerly worked in auto repair and as a laborer (AR 166).

Furthermore, the ALJ properly evaluated plaintiff's education under the applicable regulations, which provide in pertinent part:

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
>
>> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple

> message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 416.964(b)(1)-(3).

       The record supports the ALJ's determination under § 416.964 that plaintiff has a limited education and is able to communicate in English (AR 15, 19-43). At step five of the sequential evaluation, the vocational expert took plaintiff's limited education into account, identifying jobs available to an individual who possessed plaintiff's "vocational profile related to age, education and work history" (AR 41). Finally, while plaintiff allegedly attended some special education classes during middle school or junior high school, he did not claim a mental disability (such as mental retardation). Accordingly, plaintiff's claim that he is disabled due to having only a 3rd grade education should be denied.

**IV.     Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  May 31, 2011                              /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).